COURT OF APPEALS OF VIRGINIA

Present:  Judges AtLee, Malveaux and Senior Judge Annunziata
Argued at Fredericksburg, Virginia

JOSE MANUEL RAMOS-FANTAUZZI

                                                  MEMORANDUM OPINION* BY
v.        Record No. 2064-16-4           JUDGE MARY BENNETT MALVEAUX
                                                         AUGUST 1, 2017
ELIZABETH SANTA MATOS

            FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                         Victoria A.B. Willis, Judge

            Anthony C. Williams (Williams Stone Carpenter Buczek, PC, on
            briefs), for appellant.

            Lawrence D. Diehl (Ann Brakke Campfield; Barnes & Diehl, P.C.,
            on brief), for appellee.


        Jose Manuel Ramos-Fantauzzi ("husband") appeals two final orders of the circuit court, one

denying his motion to reconsider and one entering a military qualifying court order.  Husband

argues that the circuit court erred in awarding Elizabeth Santa Matos ("wife") a fifty percent share

of his military retired pay pursuant to Code §§ 8.01-465.1 and -465.2 when the parties were

divorced by final decree in Puerto Rico and the final decree did not award wife a share of his

military retired pay.  We hold that because the Puerto Rican judgment did not include an actual

award of husband's military retired pay, the circuit court did not have the authority to enter a

military qualifying court order.  Consequently, we reverse the judgment of the circuit court.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

Husband and wife were married in Puerto Rico on August 30, 1975 and divorced there on September 11, 2006. They lived together in Puerto Rico for approximately three years of their marriage. Husband was in the military, and he and wife moved several times throughout their marriage. Wife has resided in Virginia since 2006. Husband bought a home in Virginia in 2010, and lived in Virginia at the time of the current litigation.

On August 28, 2006, the parties submitted a motion to the Superior Court of Bayamon, Puerto Rico ("Puerto Rico court") asking for a divorce.[1] At that time, husband had lived in Puerto Rico for at least the prior year, while wife was living in Virginia. In this order, husband stipulated that wife was "eligible for all the benefits under the Uniformed Services Former Spouses Federal Law (USFSPA), 10 U.S.C. Section 1408" and various other benefits.[2] The motion noted that "[t]he parties have been advised of the Deluca Roman v Colon Nieves[,] 119 DPR 720."[3]

On September 11, 2006, the Puerto Rico court entered an order, entitled "Sentencing," dissolving the parties' marriage. In this order, the court noted husband's stipulation that wife was "eligible for all of the benefits under the Federal Law the Uniformed Services Former

---

[1] Although the foreign decrees entered in this case have slightly different names in regard to their court of origin, all purport to be from a "Superior Court" in Bayamon, Puerto Rico.

[2] The Uniformed Services Former Spouses' Protection Act ("USFSPA"), 10 U.S.C. § 1408, defines "court" as "any court of competent jurisdiction of any State, . . . [and] the Commonwealth of Puerto Rico." 10 U.S.C. § 1408(a)(1)(A). The Act, in part, provides that these courts may "treat disposable retired pay . . . either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." 10 U.S.C. § 1408(c)(1).

[3] This is a reference to Delucca Róman v. Colón Nieves, 119 D.P.R. 720 (P.R. 1987), a decision of the Supreme Court of Puerto Rico, which held that a pension under the Uniformed Services Former Spouses' Protection Act was the exclusive right of one spouse and not community property subject to division between the two parties.

Spouses Act, (USFSPA) 10 U.S.C. Sec. 1408, and the following relative to the available benefits to [wife] . . . includ[ing], among other benefits, the SURVIVORS' BENEFIT PLAN (SBP); 20/20/20; Military ID card; Commisary [sic] and PX/BX; 20/20/20, Medical Benefits, etc." On November 6, 2006, the Puerto Rico court entered an order entitled "Sentence Amended *Nunc Pro Tunc*." The November 6 order included the same stipulation as the September 11 order.[4]

On January 10, 2012, wife filed a motion in the Puerto Rico court "to authorize transfer to the judicial jurisdiction of the state of Virginia" of "a claim pending in this case for division of assets" of husband's military benefits, "pursuant to the stipulation in the divorce of the parties and as established by the Federal Uniformed Services Former Spouses Act." On June 7, 2012, husband filed objections to wife's motion to transfer.

Following wife's motion, the Puerto Rico court entered an order, entitled "Partial Verdict," on December 4, 2012. In this order, the Puerto Rico court found that Puerto Rico was a *forum non conveniens* to adjudicate wife's claim. The Partial Verdict, under a "Conclusions of Law" heading, "authorized that the claim by [wife] for 50% of the military benefits of [husband], based on the stipulation of divorce of the parties and the scope of the Federal Uniformed Services Former Spouses Act, be transferred and filed in the jurisdiction of Virginia and that it be assumed by that jurisdiction." The court further ordered, under a "Verdict" heading, that "the pending claim related to the share of [wife] of the military benefits received by [husband] . . . pursuant to the Stipulation of Divorce, approved by verdict, and as set forth in the Federal Uniformed Services Former Spouses Act be transferred to be heard before the Courts of the State of Virginia, United States of America."

---

[4] The September 11, 2006 Sentencing order specified that "the stipulations and amendments offered by the parties are approved, and they form part of the Sentence." The November 6, 2006 Sentence Amended *Nunc Pro Tunc* order did not include this language.

On July 7, 2016, wife filed a motion in the Stafford County Circuit Court ("the circuit court") noticing her filing of a foreign decree pursuant to Code §§ 8.01-465.1 and -465.2. Along with this motion, wife filed the Partial Verdict and Sentence Amended *Nunc Pro Tunc*. Notice of this filing was sent by certified mail to husband.

On July 22, 2016, wife filed a motion in the circuit court for the entry of a military qualifying court order ("MQCO") awarding wife fifty percent of husband's military retired pay and a survivor benefit annuity "consistent with the parties Divorce Decree . . . and the Partial Verdict." Husband filed a response in opposition to wife's request, contending that wife was not awarded a share of husband's military retired pay in the Puerto Rico decree and that wife's claim was also barred by *res judicata*.

The court, subsequent to a hearing on wife's motion held August 29, 2016, ruled that it had jurisdiction to address wife's claim to husband's military retired pay. The court's September 28, 2016 order stated that "the Commonwealth of Virginia hereby assumes jurisdiction as to the issue of [wife's] receipt of [husband's] military benefits." The court then continued the matter "for an evidentiary hearing as to the entry" of the MQCO.

Husband filed a motion to reconsider this order on October 5, 2016, and the court heard the motion on October 25, 2016, the original continuance date for the evidentiary hearing. In this hearing, husband noted that the draft MQCO reflected that it was issued pursuant to Code § 20-107.3. Husband argued that particular code section did not confer jurisdiction, since the final decree was entered more than two years previously. Husband further argued that since an equitable distribution was made at the time of the divorce, the issue of husband's military retired pay was barred by *res judicata*. Wife argued that the foreign decrees were properly filed under Code § 8.01-465.2 and therefore the court had the ability to enter the MQCO.

- 4 -

The circuit court denied husband's motion to reconsider from the bench. On November 16, 2016, the court entered two orders. The first order memorialized the trial court's denial of husband's motion to reconsider the circuit court's decision regarding jurisdiction. The second order was the entry of a MQCO, which awarded wife fifty percent of the marital share of husband's military retired pay and a survivor benefit annuity. That order stated that it was "issued pursuant to §8.10-465.1 and §8.01-465.2 of the Code of Virginia, 1950, as amended."[5] Husband appeals both orders to this Court.

## II. ANALYSIS

On appeal, husband contends that the circuit court erred when it awarded wife fifty percent of the martial share of his military retired pay pursuant to the Uniform Enforcement of Foreign Judgments Act ("UEFJA"), Code §§ 8.01-465.1 to -465.5, as the Partial Verdict did not award wife any share of husband's retired military income; consequently, there is no award for a Virginia court to enforce. Additionally, husband argues that Puerto Rico's decision to divest itself of jurisdiction did not establish jurisdiction in Virginia.[6]

Wife argues that Virginia properly accepted jurisdiction under the UEFJA, and after accepting jurisdiction under the statute merely issued an order dividing husband's military benefits pursuant to the parties' stipulation. Wife specifically contends that the judgment registered here was not an order enforcing any duration of an award of the military retirement pay to wife by Puerto Rico, but was instead an order transferring jurisdiction over that issue.

As a preliminary matter, we note that husband's assertion is correct—Puerto Rico's decision not to make a determination regarding the division of husband's military retired pay

---

[5] The reference to a "§ 8.10-465.1" is clearly a typographical error, as the relevant statute is Code § 8.01-465.1.

[6] Husband also argues that wife's claim is barred by *res judicata*. As we decide this issue on other grounds, we need not address this particular argument.

does not establish Virginia's jurisdiction over that claim.[7]  "[S]ubject matter jurisdiction, perhaps best understood as the 'potential' jurisdiction of a court, is the authority granted to it by constitution or statute over a specified class of cases or controversies . . . ."  Ghameshlouy v. Commonwealth, 279 Va. 379, 388, 689 S.E.2d 698, 702 (2010).  "Subject matter jurisdiction may be fixed only by the constitution or a statute, and it may not be conferred upon a court by the consent of the parties."  Rogers v. Damron, 23 Va. App. 708, 711, 479 S.E.2d 540, 541 (1997).  Here, the purported grant of jurisdiction from the Puerto Rico court to the Virginia circuit court clearly is not a proper basis for a finding of jurisdiction; since this jurisdiction did not arise from any constitutional or statutory provision, it could not provide the circuit court with authority to enter the MQCO.

Therefore, the circuit court's entry of the MQCO was only valid if it was a proper exercise of its powers under the UEFJA.  We review "pure questions of law concerning statutory interpretation . . . *de novo*."  Gilliam v. McGrady, 279 Va. 703, 708, 691 S.E.2d 797, 799 (2010).

First enacted in 1988, the UEFJA, Code §§ 8.01-465.1 to -465.5, facilitates the enforcement of foreign judgments in Virginia's courts.  The statute "provides for reciprocity and reasonable facility in enforcing foreign judgments in Virginia and for Virginia's judgments to be enforced in those states that have adopted this Uniform Act."  Report of the Virginia Commissioners to the National Conference of Commissioners on Uniform State Laws, Uniform State Laws, House Document No. 4, at 7 (1988).  The statute details the procedures for filing foreign judgments entitled to full faith and credit in the circuit courts of this Commonwealth.

---

[7] Additionally, wife acknowledges on appeal that the circuit court did not acquire jurisdiction over her claim under Code § 20-107.3(J), the section of the Virginia equitable distribution statute that sets forth the requirements for when courts in Virginia have jurisdiction over parties who have been granted a divorce by a foreign court.

The UEFJA defines "foreign judgment" as "any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this state."[8] Code § 8.01-465.1. Under the UEFJA, a judgment creditor is permitted to docket a foreign judgment, which is then treated as a judgment of a court of the Commonwealth. Code § 8.01-465.2. The UEFJA specifically provides that: "A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a circuit court of any city or county of this Commonwealth and may be enforced or satisfied in like manner." Id.

Although wife claims that the action in this case was brought to enforce a foreign order under the UEFJA, with the circuit court "accept[ing] jurisdiction under" this statute, it is clear from the statutory provisions that the UEFJA only allows for the docketing of a foreign "judgment, decree, or order," which can then be enforced as a Virginia judgment.[9] Code

---

[8] While Puerto Rico is not a "state," and thus the Full Faith and Credit Clause of Article Four, § 1 of the United States Constitution is not directly applicable to judicial proceedings of Puerto Rican courts, Congress has provided that "the records and judicial proceedings of any court of any . . . State, Territory or Possession" "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of [the] State, Territory or Possession from which they are taken." 28 U.S.C. § 1738. This statute requires Virginia courts to afford full faith and credit to judicial proceedings of United States territories, such as Puerto Rico.

[9] Wife cites an Attorney General's Opinion in support of her position that the UEFJA "authorizes the recordation of non-monetary foreign judgments in addition to monetary decrees or awards." In the Opinion cited by wife, the question presented was "whether Virginia's adoption of the Uniform Enforcement of Foreign Judgments Act, §§ 8.01-465.1 through 8.01-465.5 of the Code of Virginia, authorizes clerks of the circuit courts of this Commonwealth to accept properly authenticated copies of nonmonetary foreign judgments in addition to monetary decrees or awards." 1995 Op. Att'y Gen. Va. 26, 26 (Apr. 14, 1995). The Attorney General opined that the UEFJA did authorize circuit courts to accept non-monetary judgments, such as a sister state's judgment resolving a dispute over paternity or a contested will. However, an order purporting to confer jurisdiction on another sovereign's court is not a non-monetary judgment; rather than determining the parties' rights or obligations, it only suggests that some other forum should determine those issues instead.

We further note that while an Opinion of the Attorney General is "entitled to due consideration, [it is] not binding on this Court." Twietmeyer v. City of Hampton, 255 Va. 387,

- 7 -

§§ 8.01-465.1 to -465.5 confers jurisdiction only in the sense that a foreign judgment becomes in essence a judgment of the Commonwealth, and can then be enforced through the normal procedures found in the Code.

In the circuit court, wife, acting as the judgment creditor, properly noticed the docketing of the two foreign orders to husband, the judgment debtor—the Sentence Amended *Nunc Pro Tunc* and Partial Verdict. As related to the MQCO, the Sentence Amended *Nunc Pro Tunc* included the stipulation that wife was "eligible for all of the benefits under the Federal Law the Uniformed Services Former Spouses Act, (USFSPA) 10 U.S.C. Sec. 1408, and the following relative to the available benefits to [wife] . . . includ[ing], among other benefits, the SURVIVORS' BENEFIT PLAN (SBP); 20/20/20; Military ID card; Commisary [sic] and PX/BX; 20/20/20, Medical Benefits, etc." The Partial Verdict purported to transfer wife's "pending claim related to the share of [wife] of the military benefits received by [husband] . . . pursuant to the Stipulation of Divorce, approved by verdict, and as set forth in the Federal Uniformed Services Former Spouse's Act" to the courts of the Commonwealth of Virginia.[10]

As wife acknowledges on brief, neither of these orders are an actual award of any portion of husband's military retired pay. Although wife properly docketed both foreign judgments in the circuit court, neither order included language granting wife half of husband's military retired

_____

393, 497 S.E.2d 858, 861 (1998) (alteration in original) (quoting City of Virginia Beach v. Virginia Restaurant Assoc., 231 Va. 130, 135, 341 S.E.2d 198, 201 (1986)).

[10] The Partial Verdict entered by the Puerto Rico court is clearly that court's attempt to transfer venue to what it found was a more appropriate venue. In Virginia, pursuant to Code § 8.01-265, a court has the ability to transfer venue to "any fair and convenient forum," but this forum must have "jurisdiction within the Commonwealth." Code § 8.01-265 allows for courts in the Commonwealth to transfer venue to another forum within the Commonwealth that has proper jurisdiction over the claim; it does not provide any authority for a court outside the Commonwealth to transfer venue to a Virginia court.

pay; thus, these orders do not provide the circuit court with the authority to enter a MQCO granting wife fifty percent of that pay.

Under the UEFJA, the circuit court had the authority to docket foreign judgments and enforce their terms as it would the terms of any other judgments from courts of the Commonwealth. Here, the docketed foreign judgments included no award of military retirement pay, so there was no judgment regarding military retirement pay for the Virginia court to enforce. Lacking any specific award to enforce, the court could do no more than docket the foreign decrees pursuant to the statute. As the docketed foreign judgments only provided that wife was "eligible" for certain benefits and was asserting a "pending claim" for those benefits, the court did not have the authority under the UEFJA to determine whether she actually was entitled to a portion of husband's military retired pay. The court was entirely without jurisdiction to determine the merit of wife's claim. Thus, the circuit court erred in denying husband's motion to reconsider the trial court's acceptance of jurisdiction and in its entry of a MQCO awarding wife fifty percent of the marital share of husband's military retired pay and a survivor benefit annuity.

Attorney's Fees

On appeal, both husband and wife ask for an award of attorneys' fees and costs incurred in this appeal.[11] "The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear." O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). That court "has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other

---

[11] Husband's request for attorney's fees does not specify if his request extends to fees from the circuit court as well as those incurred in the appellate court. To the extent that the request includes fees from the circuit court, we decline to grant the award.

reasons exist for requiring additional payment." Id. at 695, 479 S.E.2d at 100. Upon consideration of the entire record on appeal, both parties' requests are denied.

III.  CONCLUSION

For the foregoing reasons, we reverse the decisions of the circuit court denying husband's motion to reconsider and entering a military qualifying court order.

Reversed and vacated.